UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

KEN GOODMAN,                                          CASE NO:

            **Plaintiff,**

v

JACK COOPER TRANSPORT, CO., and                       HON.

CASSENS TRANSPORT, CO., and

            **Defendants.**

_____/

Joni M. Fixel (P56712)
Attorney for Plaintiff
Fixel & Nyeholt, PLLC
4084 Okemos Rd., Ste B
Okemos, MI 48864
(517) 332-3390
jfixel@fixellawoffices.com

## COMPLAINT

NOW COMES the Plaintiff Goodman, Ken Goodman, by and through his attorney, Joni M. Fixel, and in support of his complaint states the following:

## VENUE

1. Plaintiff Goodman resides in the City of Lansing, County of Ingham, in the State of Michigan.

1

2. Defendant Jack Cooper Transport Co.'s (hereinafter "JCTC") primary place of business is located at 2345 Grand Blvd. Ste. 400, in Kansas City, Missouri. They maintain multiple business locations within the State of Michigan for the purpose of engaging in commercial operations.

3. Defendant Cassens Transport Co.'s (hereinafter Defendant "CTC") primary place of business is located at 145 North Kansas Street, in the city of Edwardsville, Illinois. They maintain multiple business locations within the State of Michigan for the purpose of engaging in commercial operations.

4. The events in controversy largely occurred at Defendant JCTC's "Lansing Terminal", which is located at 9151 Billwood Highway, in the City of Dimondale, County of Eaton, in the State of Michigan.

5. The amount in controversy exceeds $75,000.00.

6. Jurisdiction is appropriate given the diversity of citizenship of the involved parties pursuant to 28 USC 1332(a)(1) and (c)(1).

## BACKGROUND FACTS

Plaintiff incorporates paragraphs 1-6 herein by reference.

7. Plaintiff Goodman began his employment with Defendant JCTC in the Wayne County area of MI on or about August 1st, 2011 as a car hauler.

8. While working out of Defendant JCTC's Wayne County locations, he made many trips to Defendant JCTC's Lansing Terminal without incident.

9. During these trips, Plaintiff Goodman had interactions with Defendant JCTC's terminal manager, Margo Hopkins. Plaintiff Goodman had met Margo Hopkins at a prior job in 2003.

10. Plaintiff Goodman alleges that Margo Hopkins made some strange statements to him when he visited the Lansing Terminal, but the Plaintiff Goodman thought little of it at the time.

2

11. Plaintiff Goodman was reassigned to Defendant JCTC's terminal located in Lansing, MI on or about September 10nd, 2012. He was transferred along with three other employees. Plaintiff Goodman was the only African-American individual transferring; the other individuals were white.

12. Plaintiff Goodman worked at Defendant JCTC's Lansing terminal for approximately four days before being called into a meeting with Ms. Hopkins.

13. Plaintiff Goodman was informed by Hopkins that he was being terminated for falsifying his application. The specific facts that were cited by Hopkins as falsified was that he had not included his employment with Defendant CTC and Leaseway as part of his work history on his application.

14. Plaintiff Goodman claimed that he had left Defendant CTC off the application because of the likelihood of a bad reference, and that Leaseway was now defunct.

15. Plaintiff Goodman further stated that he had been involved in no disciplinary incidents while employed with Defendant JCTC and that his work to this point had been considered satisfactory.

16. Hopkins stated that she still felt that Plaintiff Goodman had lied concerning his references and terminated his employment with Defendant JCTC on or around September 14th, 2012 (the termination letter sent to the Plaintiff Goodman in the following week erroneously stated the date of termination as September 21st).

17. Plaintiff Goodman believes that it is not Defendant JCTC's customary contractual procedure or policy to review a transferred employee's application. Further, of the three employees that Plaintiff Goodman transferred with, none were chosen to be reviewed by Ms. Hopkins in this way. They were allowed to remain employed.

18. Hopkins justified her decision to terminate Plaintiff Goodman based upon improperly furnished expired disciplinary information received from Defendant CTC.

19. Plaintiff Goodman believes that the stated reasons given by Hopkins were only pretext for discriminatory behavior. He filed a suit thereafter through his Union and the EEOC to contest his termination.

20. The Union was unable to resolve the matter, and recommended that Plaintiff Goodman find an attorney.

21. The EEOC issued a right-to-sue letter on behalf of Plaintiff Goodman; they also advised that he find an attorney.

## COUNT ONE: VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT
## (AS TO DEFENDANTS JCTC ONLY)

Plaintiff incorporates paragraphs 1-21 herein by reference.

22. Defendant JCTC is considered an "employer" as defined in MCL 37.2101 et seq.

23. Plaintiff Goodman is considered an "employee" as defined by MCL 37.2201et seq.

24. Plaintiff Goodman's race was a determining factor in Defendant JCTC's decision to terminate his employment.

25. Had Plaintiff Goodman been white, he would not have been terminated.

26. Similarly situated white drivers were not reviewed by Hopkins as she did for Plaintiff Goodman.

27. Defendant JCTC, through its terminal manager, Defendant Hopkins, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

28. Defendant JCTC, through its terminal manager, Margo Hopkins, treated Plaintiff differently from similarly situated white employees in the terms and conditions of employment, based on unlawful consideration of race.

29. Defendant JCTC's actions through its terminal manager, Hopkins, were intentional in disregard for Plaintiff Goodman's rights and sensibilities.

30. As a direct and proximate result of Defendant JCTC's unlawful actions through its terminal manager, Defendant Hopkins, Plaintiff Goodman has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

## COUNT TWO: VIOLATION OF THE PERSONNEL RECORD REVIEW ACT
## (AS TO DEFENDANT CTC ONLY)

Plaintiff incorporates paragraphs 1-30 herein by reference.

31. Plaintiff Goodman is considered an "employee" as defined by MCL 423.501(2)(a).

32. Defendant CTC is considered an "employer" as defined by MCL 423.501(2)(b).

33. The records issued by Defendant CTC to agents of Defendant JCTC are considered "personnel records" as defined by MCL 423.501(2)(c).

34. Defendant CTC improperly issued Plaintiff Goodman's personnel records to Defendant JCTC in violation of MCL 423.507, which states that:

    *An employer shall review a personnel record before releasing information to a third party and, except when the release is ordered in a legal action or arbitration to a party in that legal action or arbitration, delete disciplinary reports, letters of reprimand, or other records of disciplinary action which are more than 4 years old.*

35. Further, Defendant CTC failed to issue notice to Plaintiff Goodman of the release of records pursuant to MCL 423.506.

36. As a direct and proximate result of Defendant CTC's unlawful actions, Plaintiff Goodman has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff Goodman, being without relief other than this Honorable Court, respectfully requests that this Court find against the Defendants and that the Plaintiff be awarded:

a. compensatory damages in whatever amount he is found to be entitled;

b. exemplary damages in whatever amount he is found to be entitled;

c. an award of lost wages and the value of fringe benefits, past and future;

d. an award of interest, costs, and reasonable attorney fees;

e. an order enjoining Defendants, their agents, representatives, and employees from further acts of discrimination or retaliation;

f. an order reinstating Plaintiff to the position he would have held if Defendants had not discriminated; and

g. an order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Respectfully Submitted,

_____          Dated: __1-6-15_____
Joni M. Fixel (P56712)
Attorney for Plaintiff
Fixel & Nyeholt, PLLC
4084 Okemos Rd., Ste B
Okemos, MI 48864
(517) 332-3390
jfixel@fixellawoffices.com

## VERIFICATION

I, **Ken Goodman**, have read and made this verified complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

Dated: 12/4/14                    Signed: _____