**EXHIBIT 1**

No *Shepard's* Signal™
As of: October 13, 2015 11:07 AM EDT

## *Damghani v. Pepsico, Inc.*

Court of Appeals of Michigan

September 10, 2015, Decided

No. 321276

**Reporter**
2015 Mich. App. LEXIS 1693

ELIZABETH DAMGHANI, Plaintiff-Appellant, v PEPSICO, INC., PEPSI BEVERAGES COMPANY, and JERRY CASWELL, Defendants-Appellees.

**Notice:** THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**Prior History:**    [*1] Kent Circuit Court. LC No. 12-004854-CD.

## Core Terms

termination, age discrimination, complaints, prima facie case, pretext, no evidence, retaliation, adverse employment action, direct evidence, summary disposition, discriminatory, decision to terminate, trial court, motivating, cashier, genuine, remarks, causal, unfair, adverse employment decision, material fact, circumstantial, employees, argues, retire, stray

**Judges:** Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

## Opinion

Per Curiam.

Plaintiff Elizabeth Damghani appeals as of right the trial court's order granting defendants Pepsico, Inc., Pepsi Beverages Company, and Jerry Caswell's motion for summary disposition pursuant to *MCR 2.116(C)(10)*. We affirm.

Plaintiff began working for Pepsi in 1985 at its facility located in Grand Rapids, Michigan. Plaintiff claimed she did not have problems with her supervisors until Jerry Caswell became her supervisor, which was sometime in 2006. Plaintiff claimed that Caswell was sarcastic and critical of her but kind and happy with other employees, especially younger ones. In addition, at some time in 2010, Caswell asked plaintiff when she would retire.

Plaintiff received good evaluations regarding her performance until 2010. In 2011, her supervisors Amy Heiney and Caswell discovered that she was violating various provisions of company policy. In December 2011, Caswell placed plaintiff on a performance improvement plan (PIP). The objective of this PIP was to inform plaintiff of the deficiencies in her performance and to help plaintiff improve. While on the PIP, plaintiff met with Caswell every other [*2] week to discuss her objectives and progress. After eight weeks on the PIP, Caswell extended plaintiff's PIP because plaintiff's performance had not improved to a satisfactory level. Though plaintiff sometimes showed improvement during the PIP, her performance would relapse, and she needed assistance in maintaining her objectives.

While on her PIP, Heiney met with plaintiff and removed her as lead cashier. At this meeting, Heiney indicated that plaintiff would likely be retiring soon and that Heiney wanted the role to go to a younger employee. After she was placed on her PIP, plaintiff told William Warren, Caswell's supervisor, about Heiney's remark to her and that she felt she was being "set up" because of her age. Warren instructed plaintiff to tell human resources about her complaints. Plaintiff subsequently told Lindsey Leonardis, the human resources manager, that she felt she was being "set up." Warren told Leonardis about Heiney's comment to plaintiff. Leonardis told Heiney her comment was inappropriate and not to make such comments in the future.

On April 18, 2012, Caswell terminated plaintiff's employment because she was unable to sustain satisfactory performance. After her termination, [*3] another prior Pepsi employee, Salvatore Zerilli, was in the computer store owned by plaintiff's husband. His conversation was recorded by a store surveillance camera. This recording confirmed that Zerilli told plaintiff about a "rule of 80" at Pepsi. Zerilli

stated that under this rule, Pepsi terminates its employees whose combined years of service and age amounts to at least 80. Plaintiff later sued defendants for age discrimination and retaliation under the Civil Rights Act (ELCRA), _MCL 37.2201 et seq._ The trial court granted defendants' motion for summary disposition.

Plaintiff first argues that the trial court erred in concluding summary disposition was proper because Heiney's statement to plaintiff regarding her retirement and wanting to give the role of lead cashier to a younger employee was direct evidence of discrimination. _MCL 37.2202_ states in relevant part:

> (1) An employer shall not do any of the following:

> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

Proof of [*4] discriminatory treatment under _MCL 37.2202_ "may be established by direct evidence or by indirect or circumstantial evidence." _Sniecinski v Blue Cross & Blue Shield of Mich, 469 Mich 124, 132; 666 NW2d 186 (2003)._ Direct evidence is that which "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." _Hazle v Ford Motor Co, 464 Mich 456, 462; 628 NW2d 515 (2001)_ (quotation omitted). Where a plaintiff presents direct evidence of discrimination and "where the adverse employment decision could have been based on both legitimate and legally impermissible reasons, a plaintiff must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." _Sniecinski, 469 Mich at 133._ Also, a plaintiff must "present direct proof that the discriminatory animus was causally related to the adverse decision." _Id._ In other words, "a defendant may avoid a finding of liability by proving that it would have made the same decision even if the impermissible consideration had not played a role in the decision." _Id._ "[A] plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." _Id. at 134-135._

Obviously then, to establish a claim of discrimination, a plaintiff must show that she suffered an adverse employment action. _Wilcoxon v Minn Mining & Mfg Co, 235 Mich App 347, 362; 597 NW2d 250 (1999)_ [*5] . An adverse employment action (1) must be more than a mere inconvenience or alteration of job responsibilities and (2) must be objectively demonstrated as an adverse change because a plaintiff's subjective impressions or desires are not controlling. _Id. at 364_; _Peña v Ingham Co Road Comm, 255 Mich App 299, 311; 660 NW2d 351 (2003)._

> Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular decision. [_Peña, 255 Mich App at 312_ (quotation omitted).]

Here, plaintiff failed to present evidence showing that her removal as lead cashier was an adverse employment decision. See _Chen v Wayne State Univ, 284 Mich App 172, 205; 771 NW2d 820 (2009)_ (an alteration of job assignments is not by itself an adverse employment action). Plaintiff admitted that her removal from the role of lead cashier did not reduce her compensation or benefits. Heiney and Caswell testified that the role of lead cashier was not an actual job title; rather, it was merely a designation of duties. Plaintiff's testimony supported this. Thus, the alleged adverse action did [*6] not result in a less distinguished title. The record also does not support that the action significantly diminished plaintiff's material responsibilities. Thus, this action did not have an adverse effect on plaintiff's compensation, status, or benefits. _Id._ Therefore, there was no genuine issue of material fact regarding whether relieving plaintiff of her role as lead cashier was an adverse employment action. _Id.; Peña, 255 Mich App at 311-312._ Thus, Heiney's comment could not be direct evidence of discrimination with regard an adverse employment action. Summary disposition based on direct discrimination was proper.

In reaching our conclusion, we reject plaintiff's argument that Heiney's statement is direct evidence of discrimination with regard to her termination under a theory of "cat's paw liability." _Staub v Proctor Hosp, 562 U.S. 411, 415-416; 131 S Ct 1186; 179 L Ed 2d 144 (2011)._ Under this theory, Heiney's comment to plaintiff may be direct evidence of discrimination with regard to plaintiff's subsequent termination if it can be shown that Heiney's discriminatory motivation toward plaintiff was a causal factor underlying Caswell's decision to terminate plaintiff. _Id. at 422-423._ Michigan has not adopted the cat's paw theory, and even if it did, the theory would not apply here because no evidence [*7] was presented to support that Heiney's animus as reflected by her comment related to Caswell's decision to

terminate plaintiff three months later. *Id.* To hold that the comment may have had a casual connection to plaintiff's termination would require this Court to engage in speculation and conjecture, which it cannot do. *Libralter Plastics, Inc v Chubb Group of Ins Cos, 199 Mich App 482, 486; 502 NW2d 742 (1993).*

Next, plaintiff argues that she presented circumstantial evidence of discrimination by providing evidence that defendants treated her differently from other employees and that her alleged performance problems were merely a pretext to hide the fact that defendants wanted to terminate her because her combined age and years of experience amounted to 80. When a plaintiff presents circumstantial—rather than direct—evidence of age discrimination, Michigan courts "allow a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *DeBrow v Century 21 Great Lakes, Inc (After Remand), 463 Mich 534, 538; 620 NW2d 836 (2001).* This approach "has its roots in *McDonnell Douglas Corp v Green, 411 U.S. 792, 802-805; 93 S Ct 1817; 36 L Ed 2d 668 (1973)*, and has been employed in countless subsequent decisions." *Id. at 537.* The *McDonnell Douglas* approach is as follows:

> To establish a prima facie case of age discrimination, plaintiff must prove, by a preponderance **[*8]** of the evidence, that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a younger person. [*Lytle v Malady (On Rehearing), 458 Mich 153, 177; 579 NW2d 906 (1998).*]

"Once plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination to overcome and dispose of this presumption." *Id. at 173* (quotation omitted). If the defendant does so, the plaintiff must prove by a preponderance of the evidence that the legitimate reason offered by the defendant was a mere pretext. *Meagher v Wayne State Univ, 222 Mich App 700, 711; 565 NW2d 401 (1997).*

> A "mere pretext" may be proved (1) by showing that the reason(s) had no basis in fact, (2) if the reason(s) had a basis in fact, by showing that they were not actual factors motivating the decision, or (3) if the reason(s) were motivating factors, by showing that they were jointly insufficient to justify the decision. [*Id. at 712.*]

Nevertheless, an employer's unsound business judgment will not establish "mere pretext." *Id.* Further, the unfairness of a decision cannot be the basis of relief unless the unfair treatment was because of age discrimination. **[*9]** *Id.*

In this case, there is no dispute that plaintiff presented evidence on the first, second, and fourth elements of a prima facie case of discrimination. *Lytle (On Rehearing), 458 Mich at 172-173.* Defendants assert that plaintiff failed to show that she was qualified for the position, the third element of a prima facie case of discrimination. "An employee is qualified if he was performing his job at a level that met the employer's legitimate expectations." *Town v Mich Bell Tel Co, 455 Mich 688, 699; 568 NW2d 64 (1997).* A plaintiff must show that his job performance was sufficient so as to eliminate the possibility that inadequate job performance caused the plaintiff's termination. *Id. at 699 n 22.*

The trial court concluded that plaintiff failed to establish questions of material fact regarding the prima facie case of age discrimination because defendants presented evidence showing that plaintiff's performance began to deteriorate in 2010 and did not improve, and plaintiff did not offer evidence indicating that her performance was adequate from 2010 to the time of her termination. We agree. Plaintiff provided no evidence that her performance was "at a level that met the employer's legitimate expectations" at the time she was terminated. *Town, 455 Mich at 699.* For example, plaintiff was often unprepared for her PIP meetings; **[*10]** she needed continual assistance completing her assignments; she was unable to keep the fill logs up to date; Caswell extended her PIP because plaintiff did not sustain adequate performance during the first eight weeks; plaintiff failed to create a satisfactory procedure for tracking Pepsi Bucks, and she failed to notify Caswell when deposits were not picked up daily. Plaintiff offered no evidence to rebut defendants' evidence that her performance was inadequate at the time of her termination; rather, she offered explanations for her performance. In sum, plaintiff did not create a question of fact that she was qualified for her position. *Id.; Lytle (On Rehearing), 458 Mich at 177.*

Moreover, plaintiff was not "discharged under circumstances that give rise to an inference of unlawful discrimination." *Id. at 173.* A circumstance giving rise to such an inference exists when a plaintiff is treated differently from other persons of a different class for the equivalent conduct. *Wilcoxon, 235 Mich App at 361.* Though plaintiff testified that her counterparts at other facilities were not required to make spreadsheets as detailed as those she was required to make and that she was not permitted to attend a hiring fair

or a team building exercise with other employees, [*11] plaintiff provided no evidence that this stemmed from age discrimination. In other words, she did not show that she was treated differently from persons of a different class for the same or similar conduct. In sum, the trial court did not err in holding that plaintiff failed to create a genuine question of fact as to whether she established a prima facie case of age discrimination. *Lytle (On Rehearing), 458 Mich at 177*.

Further, defendants articulated a "legitimate, nondiscriminatory reason for plaintiff's termination" by providing ample evidence that plaintiff's performance was the reason for her termination. *Id. at 173*. And, plaintiff failed to create a genuine question of fact regarding whether her documented performance problems were merely a pretext to hide the fact that her termination was motivated by age discrimination under the asserted rule of 80. Indeed, plaintiff has provided no admissible evidence that such a rule existed. Though plaintiff provided the names of four employees who she claimed were also terminated under the rule of 80, plaintiff did not provide admissible evidence that their termination was based on their age. The trial court did not err in holding inadmissible as hearsay, *MRE 802*, Zerilli's recorded statements, [*12] deposition testimony, and an employee's affidavit that he heard of the rule. When challenged on a motion for summary disposition, the existence of a disputed fact must be established by substantively admissible evidence. *MCR 2.116(G)(6)*; *Maiden v Rozwood, 461 Mich 109, 121; 597 NW2d 817 (1999)*. Therefore, plaintiff failed to create a genuine issue of material fact as to whether the rule of 80 was the motivating reason for her termination. *Meagher, 222 Mich App at 711-712*.

Plaintiff also appears to argue that the phrase "Jerry's kids" and Caswell's question to her in 2010 about when she would retire are further evidence of pretext. These statements, however, are irrelevant stray remarks. Stray remarks are not direct evidence of discrimination. *Sniecinski, 469 Mich at 136*. Our Supreme Court has provided the following five factors to consider when determining whether statements are stray remarks:

> (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision. [*Id. at 136 n 8*.]

If stray remarks "are [*13] determined to be relevant, their probative value must be weighed against the risk of unfair prejudice" pursuant to *MRE 403*. *Shaw v Ecorse, 283 Mich App 1, 25; 770 NW2d 31 (2009)*. Plaintiff gives no indication as to who exactly used the phrase "Jerry's kids," and there is no evidence that it was "related to the decision-making process" of plaintiff's termination. *Id*. And, Caswell's question about plaintiff's retiring was neither "close in time to the adverse employment decision," nor was there evidence that it related to Caswell's decision to terminate plaintiff. Therefore, these statements are irrelevant stray remarks. *Id*. Because they are irrelevant, their minimal probative value "is substantially outweighed by the danger of unfair prejudice." *MRE 403*; *Shaw, 283 Mich App at 25*.

Plaintiff also argues that because Caswell asked her to put her files on a shared drive and because Pepsi allegedly created a posting for her job before her termination, this indicates that her termination was preordained. Consequently, her performance was merely a pretext, and age discrimination was the actual reason for her termination. However, there is no evidence that this indicates the existence of discriminatory bias, and "the soundness of an employer's business judgment may not be questioned [*14] as a means of showing pretext. Moreover, unfairness will not afford a plaintiff a remedy unless the unfair treatment was because of age discrimination." *Meagher, 222 Mich App at 711-712*. Finally, plaintiff's argument that defendants' failure to investigate her complaints of age discrimination shows pretext is without merit. There is no evidence showing that defendants failed to investigate her complaints. And, there is also no indication that Caswell—the person who made the decision to terminate plaintiff—ever knew of plaintiff's complaints. Therefore, any failure to investigate was not evidence of pretext. *Id*. Because there was no question of material fact that plaintiff failed to present circumstantial evidence of discrimination, the trial court properly granted summary disposition to defendants. *MCR 2.116(C)(10)*; *Maiden, 461 Mich at 120*.

Finally, plaintiff argues that Caswell terminated her in retaliation for her complaints regarding age discrimination. *MCL 37.2701(a)* states in relevant part:

> Two or more persons shall not conspire to, or a person shall not: (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, [*15] proceeding, or hearing under this act.

To establish a prima facie case of retaliation under *MCL 37.2701*, "a plaintiff must show (1) that he engaged in a

protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v Lord & Taylor, Inc, 223 Mich App 432, 436; 566 NW2d 661 (1997)*. If the plaintiff establishes a prima facie case of retaliation,

> the burden shifts to the defendant to articulate a legitimate business reason for the discharge. If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for the discharge. [*Roulston v Tendercare (Mich), Inc, 239 Mich App 270, 281; 608 NW2d 525 (2000)*.]

The parties do not dispute that the first element is met because plaintiff engaged in activity protected under the ELCRA by complaining about Heiney's remarks and about feeling as though she were being "set up" because of her age. *MCL 37.2701(a)*. The parties also do not dispute that the third element was met because plaintiff's termination constituted an adverse employment action. *Peña, 255 Mich App at 311-312*. But [*16] plaintiff did not make any showing on the second element. Specifically she offered no evidence that Caswell, who made the decision to terminate plaintiff, knew about her complaints. *Aho v Dep't of Corrections, 263 Mich App 281, 292; 688 NW2d 104 (2004)*. Caswell testified that he was unaware that plaintiff had complained; Warren testified that he did not recall telling Caswell of plaintiff's complaints, and plaintiff testified that she was unaware of whether Caswell knew about her complaints. Because Caswell was the person who decided to terminate plaintiff and because there is no evidence that he

knew of plaintiff's complaints, there is no genuine issue of fact that the second element of a prima facie case of retaliation was not met. *Id.*

Additionally, even if Caswell had known about plaintiff's complaints, there is no evidence supporting a causal connection to establish the fourth element of a retaliation claim. *Feick v Co of Monroe, 229 Mich App 335, 344-345; 582 NW2d 207 (1998)*. Moreover, Caswell's negative evaluations of plaintiff's performance and placing her on a PIP happened before plaintiff made any complaints about age discrimination, further indicating that Caswell's decision to terminate plaintiff was motivated by plaintiff's performance and was not in retaliation for plaintiff's complaints. Plaintiff argues [*17] that her complaints and her termination were only three months apart, but this fact does not change our conclusion. "Although the timing between the protected activity and the adverse action may in some cases constitute circumstantial evidence pointing to a causal nexus," this Court has cited federal cases for the proposition that "three months was too remote to support an inference of retaliation." *Aho, 263 Mich App at 291*, citing *Reeves v Digital Equip Corp, 710 F Supp 675, 677 (ND Ohio, 1989)*. Summary disposition on plaintiff's retaliation claims was proper where no genuine issue of material fact existed on the prima facie case. *Feick, 229 Mich App at 344-345*. As the prevailing party, defendants may tax costs pursuant to *MCR 7.219*.

We affirm.

/s/ Mark T. Boonstra

/s/ William B. Murphy

/s/ Jane E. Markey